SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Janell Goffe v. Foulke Management Corp. (A-3/4-18) (081258)**

**Argued February 25, 2019 -- Decided June 5, 2019**

**LaVECCHIA, J., writing for the Court.**

This consolidated appeal involves claims that fraudulent sales practices by two car dealerships induced consumers to enter into agreements for the purchase of cars. The question is whether plaintiffs may avoid being compelled to arbitrate those claims.

Plaintiffs challenge the formation and validity of their sales agreements on the bases that the dealerships' fraudulent practices and misrepresentations induced them to sign the transactional documents and that the agreements are invalid due to violations of statutory consumer fraud requirements. As part of the overall set of documents, plaintiffs signed arbitration agreements. Those agreements contained straightforward and conspicuous language that broadly delegated arbitrability issues -- issues of whether a particular matter is subject to arbitration or can be decided by a court -- to an arbitrator.

Plaintiff Sasha Robinson contacted Mall Chevrolet in Cherry Hill about buying a car and allegedly was told that, if she purchased from the dealership, she would have two days within which to change her mind, return it, and get her money back. Robinson moved ahead with the car purchase transaction that day. She signed several documents, including one that set forth the price of the new car, various fees, the price of the trade-in, and the deposit amount. That document included an agreement to arbitrate "all claims and disputes arising out of . . . [the] purchase of any goods," including disputes as to "whether the claim or dispute must be arbitrated." When Robinson sought to return the Malibu, she was told that the representation about being able to rescind the deal was a mistake and that she was bound by the documents she signed. She alleges that the representatives attempted to "coerce" her into signing purchase documents.

Janell Goffe went to Cherry Hill Mitsubishi in response to an Internet advertisement for a Buick. Goffe was told that she could obtain the car that day if she traded in her 2006 Infiniti, paid $250 that day, and then later paid $750. She was told that financing on the Buick was approved. Goffe went ahead with the proposed deal and signed several documents -- including an arbitration agreement -- identical in form to those that Robinson signed. When Goffe returned later with the remainder of the down payment, she was informed that financing had not been approved and that she could

1

retain the Buick only if she agreed to a larger down payment and higher monthly payments. Goffe refused and cancelled the deal.

Each trial court determined the arbitration agreements to be enforceable and entered orders compelling plaintiffs to litigate their various claims challenging the overall validity of the sales contracts in the arbitral forum. The Appellate Division reversed those orders. 454 N.J. Super. 260 (App. Div. 2018). The Court granted defendants' petitions for certification. 235 N.J. 202 (2018); 235 N.J. 200 (2018).

**HELD:** The trial courts' resolution of these matters was correct and consistent with clear rulings from the United States Supreme Court that bind state and federal courts on how challenges such as plaintiffs' should proceed. Those rulings do not permit threshold issues about overall contract validity to be resolved by the courts when the arbitration agreement itself is not specifically challenged. Here, plaintiffs attack the sales contracts in their entirety, not the language or clarity of the agreements to arbitrate or the broad delegation clauses contained in those signed arbitration agreements. The Supreme Court's precedent compels only one conclusion: an arbitrator must resolve plaintiffs' claims about the validity of their sales contracts as well as any arbitrability claims that plaintiffs may choose to raise.

1. In applying the Federal Arbitration Act (FAA), the United States Supreme Court has provided substantial guidance on the question of whether arbitration should be compelled in situations such this. Section two of the FAA provides that agreements to arbitrate any controversy arising out of a commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. New Jersey case law acknowledges the preeminence of the national policy established by Congress through the FAA as well as the Supreme Court's holdings interpreting and implementing that policy. (pp. 22-24)

2. The United States Supreme Court has held that when a plaintiff raises a claim of fraud in the inducement of a contract as a whole -- rather than fraud in the making of the arbitration agreement itself -- the FAA requires that the dispute be resolved by the arbitrator. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). The Court held that "if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the 'making' of the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Ibid. The Court's determination recognized that arbitration agreements are severable from the rest of the contract and that the arbitration agreement may be valid separate and apart from the contract as a whole, provided that a party has not challenged the arbitration agreement itself. In Buckeye Check Cashing, Inc. v. Cardegna, the Court determined that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and that "unless the challenge is to the arbitration clause

2

itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. 440, 445-46 (2006). The Court therefore concluded that because the respondents in that case challenged the contract, "but not specifically its arbitration provisions," a challenge to those provisions "should therefore be considered by an arbitrator, not a court." Id. at 446. Similarly, in Rent-A-Center, West, Inc. v. Jackson, the Court held as valid a provision in a contract that delegated to the arbitrator the question of arbitrability under circumstances in which the plaintiff challenged only the validity of the contract as a whole, rather than mounting a challenge to the validity of the delegation provision specifically. 561 U.S. 63, 72 (2010). The Supreme Court of New Jersey has acknowledged the legitimacy and applicability of the Rent-A-Center holding to delegation provisions in New Jersey arbitration agreements. (pp. 24-28)

3. Here, plaintiffs have not attacked the language or clarity of the arbitration agreement or its delegation clause. Rather, they have continuously maintained that the contract was the product of fraudulent inducement and that the arbitration agreement -- within that sales contract -- is thus also invalid. The disputed facts that plaintiffs allege go to whether the dealerships performed a bait-and-switch related to enticing plaintiffs to enter into the contract as a whole. Plaintiffs have not raised a specific claim attacking the formation of the arbitration agreement that each signed. Federal precedent instructs that the arbitration agreements here be severed from the rest of the agreement, whose totality Goffe and Robinson contest on a number of grounds. Goffe and Robinson must arbitrate their claims as to the enforceability of the overall sales contract. The Court does not opine on the merits of any of those claims. (pp. 28-31)

4. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013), a case on which the Appellate Division relied, was misapplied here. In Guidotti, the dispositive issue was whether a document that included an arbitration clause was included in the initial package of documents emailed to the plaintiff and, thus, whether there was mutual assent to arbitrate. Id. at 769, 780. The Third Circuit determined under the summary judgment standard that there was a genuine issue of material fact regarding whether the parties agreed to arbitrate and remanded to the District Court for limited discovery. Id. at 780. Guidotti is in line with federal case law that allows a court to decide matters that relate directly to the formation of the arbitration agreement. However, because plaintiffs here challenge the contract as a whole rather than the arbitration agreement itself, the Guidotti summary judgment standard does not apply in this instance. (pp. 31-35)

**The judgment of the Appellate Division is REVERSED and the trial courts' orders compelling arbitration are REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-3/4 September Term 2018

081258

Janell Goffe,

Plaintiff-Respondent,

v.

Foulke Management Corp. t/a Cherry Hill Triplex/Cherry Hill
Mitsubishi and Antonio (Tony) Salisbury,

Defendants-Appellants.

Sasha Robinson and Tijuana Johnson,

Plaintiffs-Respondents,

v.

Mall Chevrolet, Inc.,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
454 N.J. Super. 260 (App. Div. 2018).

| Argued | Decided |
|---|---|
| February 25, 2019 | June 5, 2019 |

Laura D. Ruccolo argued the cause for appellants
(Capehart & Scatchard, attorneys; Laura D. Ruccolo, of
counsel and on the briefs).

1

Charles N. Riley argued the cause for respondents (Charles N. Riley, on the briefs).

Jennifer Borek argued the cause for amicus curiae New Jersey Coalition of Automotive Retailers (Genova Burns, attorneys; Jennifer Borek, of counsel and on the brief, and Matthew I.W. Baker, on the brief).

Joseph A. Osefchen argued the cause for amicus curiae NAACP Camden County East (DeNittis Osefchen Prince, attorneys; Joseph A. Osefchen and Stephen P. DeNittis, on the briefs).

William D. Wright argued the cause for amicus curiae New Jersey Association for Justice (The Wright Law Firm, attorneys; William D. Wright, on the brief).

Andrew M. Milz submitted a brief on behalf of amici curiae Consumers League of New Jersey and National Association of Consumer Advocates (Flitter Milz, attorneys; Andrew M. Milz, of counsel and on the brief, Cary L. Flitter and Jody Thomas Lopez-Jacobs, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

This consolidated appeal involves claims that fraudulent sales practices by two car dealerships induced consumers to enter into agreements for the purchase of cars. The essential question on appeal, though, is whether plaintiffs may avoid being compelled to arbitrate those claims.

Plaintiffs challenge the formation and validity of their sales agreements on the bases that the dealerships' fraudulent practices and misrepresentations

2

induced them to sign the transactional documents and that the agreements are invalid due to violations of statutory consumer fraud requirements. As part of the overall set of documents, plaintiffs signed arbitration agreements. Those agreements contained straightforward and conspicuous language about arbitration and broadly delegated arbitrability issues to an arbitrator.

Trial court orders in those individual matters compelled plaintiffs to litigate their various common law and statutory claims challenging the overall validity of the sales contracts in the arbitral forum. Each trial court determined the arbitration agreements to be enforceable. The Appellate Division reversed those orders.

We hold that the trial courts' resolution of these matters was correct and consistent with clear rulings from the United States Supreme Court that bind state and federal courts on how challenges such as plaintiffs' should proceed. Those rulings do not permit threshold issues about overall contract validity to be resolved by the courts when the arbitration agreement itself is not specifically challenged.

Supreme Court holdings treat an arbitration agreement as severable and enforceable, notwithstanding a plaintiff's general claims about the invalidity of the contract as a whole. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); see also Buckeye Check Cashing, Inc. v. Cardegna,

3

546 U.S. 440, 445-46 (2006).  The same approach pertains to issues of arbitrability.  In order to be decided by a court, an arbitrability challenge -- a challenge as to whether a particular matter is subject to arbitration or can be decided by a court -- must be directed at the delegation clause itself (which itself constitutes an arbitration agreement subject to enforcement); a general challenge to the validity of the agreement as a whole will not suffice to permit arbitration to be avoided.  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 72 (2010).

We thus approach the instant matter mindful of our obligation to comply with the Supreme Court's holdings on the severability doctrine that applies to arbitration agreements.  Plaintiffs assert common law and statutory violation theories that allegedly invalidate their overall sales agreements or otherwise render them unenforceable.  While we do not address the merits of those claims, it is clear to us that plaintiffs attack the sales contracts in their entirety, challenging their formation process and arguing that they are, at best, unenforceable.  They do not challenge the language or clarity of the agreements to arbitrate or the broad delegation clauses contained in those signed arbitration agreements.  In this setting, the Supreme Court's precedent compels only one conclusion.  On the question of who gets to decide plaintiffs' general claims about the validity of their sales contracts, we hold that an

4

arbitrator must resolve them, as well as any arbitrability claims that plaintiffs may choose to raise under these delegation clauses.

I.

A.

Plaintiffs Robinson and Goffe each signed several documents in connection with their respective car purchases from defendant car dealerships.[1] The common forms used by the dealerships[2] allow for a singular description of the documents in issue, although we recite the alleged purchase experience of each plaintiff.

1.

On November 5, 2016, plaintiff Sasha Robinson contacted Mall Chevrolet in Cherry Hill about buying a car and allegedly was told that, if she purchased from the dealership, she would have two days within which to

---

[1] We summarize the facts as presented in the plaintiffs' complaints, signed certifications, and documentary exhibits.

[2] The cases involve two dealerships -- Mall Chevrolet, Inc., and Foulke Management Corp. -- that are both located in Cherry Hill. According to defendants, the dealerships "are two separate corporate entities" and "[t]here are simply no facts to connect Mall Chevrolet . . . to Foulke Management." Plaintiffs contend that the two dealerships are "closely connected" and controlled by a "common president Charles W. Foulke Jr." They have submitted a copy of Mall Chevrolet's articles of incorporation, signed by Foulke, in support of their contention.

change her mind, return it, and get her money back.  Later that day, she went to the dealership and discussed purchasing a 2016 Chevrolet Malibu.  Mall Chevrolet employees told Robinson that -- in addition to trading in a Chevrolet Cruze that she jointly owned with her mother, Tijuana Johnson -- she would have to provide a $1000 deposit for the Malibu and that her monthly car payment on the remaining loan would be $549.  Robinson says she was told that Johnson would be required to co-sign in order to complete the transaction.

Robinson moved ahead with the car purchase transaction that day, signing several documents.  Johnson's signature does not appear on any of them.

One document Robinson signed is a two-page Motor Vehicle Retail Order (MVRO).  Among other things, the MVRO lists the date of the sale, Robinson's address, email, phone numbers, the salesperson who worked with her, the car she was purchasing, and the one she was trading in.  The MVRO lays out the financial terms of the transaction, including the price of the new car, various fees, the price of the trade-in, and the deposit amount.

Robinson signed the MVRO in multiple places.  Above her second signature, the MVRO states:

> Customer agrees that this Order on the face and on the reverse side and any attachments to it includes all the terms and conditions. . . .  **THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY**

6

**DEALER OR HIS AUTHORIZED REPRESENTATIVE.** Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the Order. I am 18 years of age or older and of full legal capacity to enter into this contract. **I ACKNOWLEDGE THAT I HAVE RECEIVED, READ, UNDERSTAND AND HAVE SIGNED THE ARBITRATION AGREEMENT WHICH APPLIES TO THIS TRANSACTION. CUSTOMER AGREES THAT CUSTOMER WILL BRING ANY CLAIMS CUSTOMER MAY HAVE HAD AGAINST DEALER, EXCEPT FOR UCC CLAIMS BUT, INCLUDING CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT, WITHIN 180 DAYS FROM THE DATE OF THIS AGREEMENT AND IF NOT BROUGHT WITHIN 180 DAYS ALL CLAIMS WILL BE TIME BARRED. UCC CLAIMS MUST BE BROUGHT WITHIN ONE YEAR.**

Robinson also signed an arbitration agreement. The agreement is detailed but, in relevant part, states:

In consideration of the mutual promises made in this agreement, you and we agree that either you or we have an absolute right to demand that any dispute be submitted to an arbitrator in accordance with this agreement. If either you or we file a lawsuit . . . or other action in a court, the other party has the absolute right to demand arbitration following the filing of such action.

ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. . . .

DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes,

7

without limitation, all claims and disputes arising out of, in connection with, or relating to:

- your purchase of any goods or services from us;
- any previous purchase of goods or services from us;

. . . .

- whether the claim or dispute must be arbitrated;
- the validity of this arbitration agreement;
- any negotiations between you and us;
- any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement;
- any claim or dispute based on a federal or state statute including, but not limited to the N.J. Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. and the Federal Truth in Lending Act;

. . . .

WAIVER OF RIGHT TO JURY TRIAL: You and we expressly waive all right to pursue any legal action to seek damages or any other remedies in a court of law, including the right to a jury trial.

ARBITRATION RULES: Arbitration will be conducted under the . . . protocol of the American Arbitration Association . . . .

. . . .

OTHER IMPORTANT AGREEMENTS:
1. The Federal Arbitration Act applies to and governs this agreement . . . .

. . . .

8

4. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable . . . .

. . . .

10. CUSTOMER AGREES TO WAIVE THE APPLICABLE STATUTE OF LIMITATIONS AS FOLLOWS: CUSTOMER AGREES THAT IT WILL BRING ANY AND ALL CLAIMS CUSTOMER MAY HAVE AGAINST DEALER, EXCEPT FOR CLAIMS FOR BREACH OF CONTRACT UNDER THE NEW JERSEY UNIFORM COMMERCIAL CODE, BUT INCLUDING CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT WITHIN 180 DAYS FROM THE DATE OF THIS AGREEMENT. IF CLAIMS ARE NOT BROUGHT WITHIN 180 DAYS THE CLAIMS WILL BE TIME BARRED. ALL CLAIMS UNDER THE NEW JERSEY CODE FOR BREACH OF CONTRACT MUST BE BROUGHT WITHIN ONE YEAR AFTER THE CAUSE OF ACTION ACCRUES.

Then, in larger font, and above a place for Robinson's signature, the agreement states: "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION." Under Robinson's signature, the agreement states: "You acknowledge that you have received a completed copy of this agreement." Robinson initialed next to the acknowledgement.

Robinson signed one more time at the bottom of the agreement, beneath the following statement:

I, AS THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT THE ATTACHED CONDITIONAL SALES OR LEASE CONTRACTS WERE FULLY COMPLETED AND EXPLAINED TO ME PRIOR TO MY AFFIXING MY SIGNATURE ON THE CONTRACT. I IMMEDIATELY RECEIVED A COPY OF THE CONTRACTS ALONG WITH THIS ARBITRATION AGREEMENT, AND ACKNOWLEDGE THAT I FULLY UNDERSTAND THE CONTENTS THEREIN.

A third document Robinson signed is a "Spot Delivery Agreement."[3] It identifies the 2016 Chevrolet Malibu as the vehicle purchased. Robinson signed the document; the line for a second "customer" is blank.

The spot delivery agreement states, in relevant part:

It is my understanding and agreement that I am taking possession and delivery of the above described vehicle prior to financing being finalized. I understand that the Dealership is not financing this transaction. I further understand that financing for the purchase of the vehicle has not been finalized and is subject to approval by an outside financing source. This is known as "Spot Delivery". I understand that this Spot Delivery Agreement is for the purpose of allowing me to take possession of the vehicle, subject to the following terms and conditions, until a final decision regarding my request for financing is made.

. . . .

2. I fully understand that, should the Dealership be unable to obtain an approval from an outside financing

---

[3] The spot delivery agreement was not presented to the trial court. It became part of the record on appeal after the Appellate Division granted Mall Chevrolet's motion to supplement the record.

10

> source . . . I will be required to obtain financing myself or surrender the vehicle to the Dealership at the Dealership's option. . . .
>
> . . . .
>
> By signing below, I acknowledge that I have been given the opportunity to read this Spot Delivery Agreement and fully understand and agree to be bound by the terms and conditions set forth herein. This Spot Delivery Agreement is hereby incorporated by reference into any other purchase documents which I may execute.

After signing the above documents, Robinson charged the $1000 deposit to her debit card and handed over the keys to her Chevrolet Cruze. Before driving home in the Malibu, Robinson was advised that she would have to return to the dealership with Johnson on the following Monday to finish signing the documents.

Robinson returned with Johnson to the dealership on Monday and declared that she no longer wanted the Malibu because it was too expensive. Mall Chevrolet's representatives told her that she could not return the Malibu, that the representation about being able to rescind the deal within two days was a mistake, and that she was bound by the documents she signed. Robinson alleges that the representatives attempted in various ways to "coerce" her into signing the purchase documents even though she demanded her $1000 deposit back. That said, Robinson was able to leave with her former car after Mall

11

Chevrolet eventually relented, returned the Chevrolet Cruze to her, and promised a return of her deposit.[4]

In this action, Robinson alleges that Mall Chevrolet did not give her a copy of any documents that she signed during the transaction. She further alleges that no one from the dealership had signed the MVRO or arbitration agreement when she saw the documents on Monday, November 7, and that they "had to be signed after we left the dealership on Monday."

Mall Chevrolet's finance manager submitted to the trial court a certification in which he asserts that he explained the MVRO and arbitration agreement to Robinson before she signed and that she acknowledged that she understood their terms. He does not assert that he gave Robinson a copy of the documents that she signed.

2.

On October 7, 2016, plaintiff Janell Goffe went to Cherry Hill Mitsubishi in response to an Internet advertisement for a Buick listed for

---

[4] According to Robinson, after she and Johnson called an attorney and threatened to call the police, Mall Chevrolet's employees backed off their initial positions. They inspected the Malibu before agreeing to return the Chevrolet Cruze and deposit. Mall Chevrolet continued to contact Robinson thereafter seeking to persuade her to buy a car from them. At some point, the dealership told Robinson that she had damaged the Malibu and that it would retain a portion of her deposit. Robinson did not receive the return of any deposit monies until shortly after she filed her complaint in Superior Court.

12

$15,800. A sales representative, Antonio Salisbury, worked with her on the deal. Essentially, Goffe was told that she could obtain the car that day if she traded in her 2006 Infiniti, paid $250 that day, and then $750 on October 21. She was told that financing on the Buick was approved through Global Lending Services and that the monthly loan payments would be $390. In going forward with the purchase, she was told to cancel her insurance on her Infiniti and that automobile insurance on the Buick would be made available through the dealership.

Goffe did go ahead that day with the proposed deal. She paid $250, cancelled the insurance on her trade-in, and purchased insurance for the Buick through the dealership. The dealership provided temporary registration on the vehicle and Goffe drove the Buick off the lot.

To proceed with the transaction, Goffe signed several documents -- including an arbitration agreement -- identical in form to those that Robinson signed. Goffe signed the documents in the same places as Robinson, signaling that she read, understood, and received copies of the documents. And, like Robinson, Goffe asserts that she was not given copies of any documents that she signed.

In a certification submitted in the present action, Goffe contends that she "did not know what arbitration was and did not agree to arbitrate or allow an

13

arbitrator to decide any disputes including the validity and enforcement of the arbitration agreement." She also states that no one ever explained the content of the documents to her and that Salisbury held the documents as she signed them and did not give them to her to read.[5]

When Goffe returned to the dealership two weeks later with the remainder of the down payment, Salisbury informed her that financing had not been approved, contrary to what he originally told her, and that she could retain the Buick only if she agreed to a larger down payment and higher monthly payments. Goffe refused and cancelled the deal. The dealership returned the traded-in vehicle but did not immediately return Goffe's initial $250 down payment. The down payment was returned after she commenced this lawsuit.

B.

Robinson and Goffe filed substantially similar six-count complaints. Each alleges statutory violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210; the Truth in Consumer Contract Warranty and Notice Act, N.J.S.A. 56:12-14 to -18; the Plain Language Act, N.J.S.A. 56:12-

---

[5] In her certification, Goffe also disputes that she signed the Spot Delivery Agreement, claiming that it is not her signature on the document. She further claims that any signature of hers that does appear on any form was obtained only through "trickery and misrepresentation."

14

1 to -13; the Truth in Lending Act, 15 U.S.C. §§ 1601 to 1667f, as well as common law fraud. Plaintiffs, who are represented by the same counsel, claim that Mall Chevrolet and Cherry Hill Mitsubishi respectively engaged in deceptive and unconscionable practices, including misrepresentations and concealment in the buying process. Robinson's complaint includes her mother, Johnson, as a co-plaintiff.

Defendants moved to dismiss the claims in each case and to compel arbitration based on the arbitration agreements. The trial courts granted the motions and compelled arbitration.

The <u>Robinson</u> trial court determined that the language of the forms that Robinson signed was unambiguous and the parties therefore entered into a binding contract. The court concluded that, based on the signed arbitration agreement and the "strong presumption in favor of arbitration," all of Robinson's claims must be resolved in arbitration.[6]

The <u>Goffe</u> trial court similarly concluded that enforcing the arbitration agreement was appropriate. Further, Goffe's claim that "she was not given an

---

[6] Mall Chevrolet filed a motion to dismiss Johnson's claims for failure to state a claim at the same time that it moved to compel Robinson to arbitrate her claims. Mall Chevrolet argued that Johnson failed to state a claim because she did not have standing as she did not sign the documents or pay a deposit. The trial court did not address whether Johnson had standing, resolving the matter purely on the basis of the arbitration issue.

opportunity to read the arbitration agreement or was not given a copy of the arbitration agreement or didn't understand the arbitration agreement" was held to be "legally insufficient" to avoid arbitration.

Goffe filed a cross-motion for limited discovery. Relying on Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013), she argued that motions to compel arbitration should be "viewed as a summary judgment motion and the non-movant must be given an opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." She argued that she was entitled to "all pertinent documents surrounding the transaction" "that could support [her] allegations of fraud." The trial court rejected her reasoning and denied the motion.

## C.

Plaintiffs appealed and the Appellate Division consolidated the cases.[7] In a published opinion, the panel reversed the orders that granted defendants'

---

[7] Mall Chevrolet cross-appealed arguing, as it did before the trial court, that Johnson has no cognizable CFA claim because she has no standing to sue. Addressing the merits of Johnson's CFA claim, the panel determined that Johnson alleged an ascertainable loss sufficient to survive a motion to dismiss, and so she has standing to bring her CFA claims. Goffe v. Foulke Mgmt. Corp., 454 N.J. Super. 260, 282-83 (App. Div. 2018). The panel also held that she could not be compelled to arbitrate her claims because she did not sign the contract. Id. at 281. We do not address whether Johnson should be compelled to arbitrate her claims -- CFA or otherwise -- because the issue is not raised in Mall Chevrolet's petition for certification and because, at oral argument, Mall

16

motions to compel arbitration.  Goffe v. Foulke Mgmt. Corp., 454 N.J. Super.

260 (App. Div. 2018).  The panel's decision contains a number of conclusions,

which are set forth below.

First, the panel determined that "[s]tanding alone . . . the particular

arbitration provisions included within the parties' sales contracts are capable

of being enforced," because of the "clear and conspicuous expression of . . .

intent" to arbitrate all claims and to waive the parties' rights to jury trials.  Id.

at 271.  Nonetheless, the panel determined that "[t]he circumstances

surrounding the execution of the documents in question raise[d] legitimate

questions about the enforceability of defendants' otherwise acceptable

arbitration provisions."  Id. at 272.

Next, the panel addressed the procedure that should be followed in order

to resolve whether the arbitration provision should be enforced.  The panel was

persuaded that the Third Circuit's decision in Guidotti established the proper

approach to resolving disputes over contract enforceability, which must

precede an order compelling arbitration.  Id. at 272-73.  Relying on Guidotti

and applying a summary judgment review standard, the Appellate Division

held that the trial court should have conducted an evidentiary hearing to

Chevrolet asserted that it does not challenge the Appellate Division's holding
that Johnson can bring her claims in court.

17

resolve, as a threshold matter, genuine and material disputes over "whether the parties entered into an enforceable contract." Id. at 273-74.

The panel identified several issues that, it believed, required evidential development. As one example, it cited the disagreement over whether Robinson's deal was dependent on Johnson's participation as a co-signer. Id. at 273.

The panel also concluded that there was a genuine issue, in both cases, regarding the import of compliance with N.J.S.A. 56:8-2.22 of the CFA, which requires a seller to provide a consumer with a copy of the executed contract when consummating a consumer agreement. The panel acknowledged that no reported decision in our State has considered "the effect of a violation of N.J.S.A. 56:8-2.22" on the enforceability of a consumer agreement; however, the panel determined that the trial court should have conducted a hearing to resolve the issue because Robinson and Goffe both alleged that "they were not given copies of the[ir] documents." Id. at 274-75. In so concluding, the Appellate Division disagreed that an arbitrator should decide the CFA issue, even though the arbitration provision specifically identifies CFA claims as being subject to arbitration. Id. at 275. The panel reasoned that whether the dealerships gave copies of the documents to plaintiffs in compliance with

18

N.J.S.A. 56:8-2.22 "is a question of disputed fact" that must be settled before arbitration can be compelled. Ibid.

The panel also determined there was a genuine issue of fact, in both cases, regarding whether cancellation of the purchase agreement and subsequent return of deposit monies resulted in rescission of the arbitration agreement. Ibid. The panel reasoned that issues related to the parties' decision to cancel the sales contract cannot be addressed through arbitration because, if there was a rescission of the purchase agreement, then the arbitration provision was rescinded as well. Id. at 276.

Last, the panel addressed the broad arbitrability provisions in the arbitration agreement. The court acknowledged that parties can agree to arbitrate arbitrability issues under the holding in Rent-A-Center. Id. at 278. But, in this matter, the panel determined that there were more fundamental questions about whether the parties entered into binding contracts, which required resolution before the arbitrability provision could have effect. Id. at 277-78.

Due to the multiple issues it viewed as requiring resolution, the Appellate Division directed the respective trial courts, on remand, to implement the Guidotti approach and to "permit limited discovery and, if necessary, evidentiary hearings." Id. at 279.

We granted defendants' petitions for certification. 235 N.J. 202 (2018); 235 N.J. 200 (2018). We also granted amicus curiae status to the New Jersey Coalition of Automotive Retailers (NJCAR), supportive of defendants, and to the New Jersey Association for Justice, the Consumers League of New Jersey and the National Association of Consumer Advocates, who are generally supportive of plaintiffs. NAACP Camden County East appeared as amicus curiae before the Appellate Division and relied on its appellate brief before this Court. Its arguments are supportive of plaintiffs' efforts to avoid compelled arbitration in settings where fraud in the inducement of a contract is involved.

## II.

The central issue in this case is whether plaintiffs should be compelled to address their claims before an arbitrator.

Before this Court, plaintiffs and the amici who support them continue to focus on the reasons they believe their overall sales agreement is invalid -- either in its formation or because it was effectively rescinded through the contract's cancellation. As they did before the Appellate Division, they argue that the arbitration agreement, which is a part of the overall invalid sales agreement between the parties, may not be enforced.

20

Defendants argue that the panel misread <u>Guidotti</u> and, consequently, expanded its holding.  Defendants factually distinguish <u>Guidotti</u> and contend that it does not apply when the challenge at issue is not specifically to the arbitration provision.  They argue that "the question of the enforceability of this Arbitration Agreement is a question for the arbitrator to decide and not the Court."  NJCAR, in support of defendants, adds clarification about the nature of spot delivery agreements which, it contends, undermines the rescission issue raised by the Appellate Division and remanded for factual development.[8]

### III.

### A.

We apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements.  <u>Hirsch v. Amper</u>

---

[8] Specifically, NJCAR says the Appellate Division erred when it held that the arbitration agreements may have been rescinded when plaintiffs failed to achieve financing.  It claims that the panel demonstrated a misunderstanding of the character of "spot-delivery vehicle transactions," which allow a consumer to take possession of a vehicle prior to the finalization of financing terms but forces the consumer to relinquish the vehicle if financing falls through.  NJCAR argues that it is illogical to characterize spot delivery agreements as "rescinded" when vehicles are returned because that flawed reasoning could apply "any time parties have fully performed their obligations under a contract that explicitly requires the return of another's property if a certain condition is met during performance."  It adds that the return of a vehicle, as contractually obligated, "is . . . an acknowledgement that the [person] remain[s] bound," not a rescission.

21

Fin. Servs., LLC, 215 N.J. 174, 186 (2013).  The enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by the trial court or Appellate Division.  Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016) (citing Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014)).

B.

In applying the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, the United States Supreme Court has provided substantial guidance on the question of whether arbitration should be compelled in situations such as we address in this case.

The FAA constitutes the supreme law of the land regarding arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10 (1984) ("In enacting [section two of the FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."). Reflecting the "fundamental principle that arbitration is a matter of contract," Rent-A-Center, 561 U.S. at 67, section two of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

22

[9 U.S.C. § 2.]

Thus, Congress intended "to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). It is the FAA's "principal purpose" to "'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (alteration in original) (quoting Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 478 (1989)). To make that so, the FAA provides remedies. First, section three provides that a party may request a stay of an in-court action of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. And, section four provides a federal remedy for a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored. 9 U.S.C. § 4.

New Jersey case law acknowledges the preeminence of the national policy established by Congress through the FAA as well as the Supreme Court's holdings interpreting and implementing that policy. See, e.g., Morgan, 225 N.J. at 304-06; Martindale v. Sandvik, Inc., 173 N.J. 76, 84-85 (2002).

23

Hence, in this matter, as in others, we look to the Supreme Court's decisions to guide us in the enforcement of arbitration agreements according to their terms.

Importantly, with respect to the type of situation that has arisen in this matter, the Supreme Court has provided guidance. We turn to that case law as our starting point.

C.

The United States Supreme Court has held that when a plaintiff raises a claim of fraud in the inducement of a contract as a whole -- rather than fraud in the making of the arbitration agreement itself -- the FAA requires that the dispute be resolved by the arbitrator. Prima Paint, 388 U.S. at 403-04.

In Prima Paint, the plaintiff brought suit alleging that the defendant "had fraudulently represented that it was solvent and able to perform its contractual obligations, whereas it was in fact insolvent and intended to file a [bankruptcy] petition." Id. at 398. The defendant moved to compel arbitration based on the arbitration provision in the contract between the parties. Ibid.

The Court framed the central issue in the case as "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." Id. at 402. The Court held that

> if the claim is fraud in the inducement of the arbitration
> clause itself -- an issue which goes to the "making" of

24

the agreement to arbitrate -- the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

[Id. at 403-04 (footnote omitted).]

The Court reasoned that "it is inconceivable that Congress intended the rule [in section four of the FAA] to differ depending upon which party to the arbitration agreement first invokes the assistance of a federal court." Id. at 404. The Court's determination recognized that arbitration agreements are severable from the rest of the contract and that the arbitration agreement may be valid separate and apart from the contract as a whole, provided that a party has not challenged the arbitration agreement itself. Id. at 403-04.

The Court reaffirmed the Prima Paint rule more recently in Buckeye, 546 U.S. 440, as well as in Rent-A-Center, 561 U.S. at 70 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").

In Buckeye, the plaintiffs signed contracts that contained arbitration agreements. 546 U.S. at 442. They thereafter brought a putative class action in state court "alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida lending and consumer-protection laws, rendering it criminal on its face." Id. at 443. Relying in large part on Prima Paint, the Court determined that "as a matter of substantive federal arbitration

25

law, an arbitration provision is severable from the remainder of the contract," and that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445-46. The Court therefore concluded that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." Id. at 446.

The Buckeye decision was based on the premise that a challenge to the validity of the arbitration agreement is different from a challenge to "the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Id. at 444. In the former scenario, the challenge is to the actual formation of the arbitration agreement; in the latter scenarios, the challenge is to the validity of the contract as a whole. Ibid.

Similarly, in Rent-A-Center, the Court held as valid a provision in a contract that delegated to the arbitrator the question of arbitrability under circumstances in which the plaintiff challenged only the validity of the contract as a whole, rather than mounting a challenge to the validity of the delegation provision specifically. 561 U.S. at 72. In Rent-A-Center, the Court

26

reaffirmed an earlier holding in <u>First Options of Chicago, Inc. v. Kaplan</u>[9] to the same effect and added that a party opposing a motion to compel arbitration on an arbitrability issue must specifically challenge the delegation clause itself rather than assert a general challenge to the validity of the contract as a whole. <u>Ibid.</u> Relying on <u>Prima Paint</u> and <u>Buckeye</u>, the Court explained that section two of the FAA "states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' <u>without mention</u> of the validity of the contract in which it is contained." <u>Id.</u> at 70. Thus, it follows that the arbitration agreement may be valid even if the underlying contract is not. <u>Ibid.</u> As a result, because the plaintiff in that case challenged only the validity of the contract as a whole, the delegation of authority to the arbitrator to resolve disputes relating to the enforceability of the agreement was valid. <u>Id.</u> at 72-73.

Our Court has acknowledged the legitimacy and applicability of the <u>Rent-A-Center</u> holding to delegation provisions in New Jersey arbitration agreements. <u>See</u> <u>Morgan</u>, 225 N.J. at 303. And, <u>Rent-A-Center</u>'s well-understood import is firmly part of the federal precedent implementing the FAA at this time. Just this year, in <u>Henry Schein, Inc. v. Archer & White</u>

---

[9] In <u>First Options</u>, the Supreme Court held that determining who has the power to decide arbitrability -- the arbitrator or the court -- turns on whether the parties agreed to arbitrate that matter. 514 U.S. 938, 943 (1995).

27

Sales, Inc., 568 U.S. ___, 139 S. Ct. 524 (2019), the Supreme Court reaffirmed the Rent-A-Center holding, adding that when the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override the contract, even if the court thinks that the argument that the arbitration agreement applies to a dispute is "wholly groundless." Id. at ___, 139 S. Ct. at 528-29.

## IV.

### A.

Based on that line of cases, we have no doubt that the arbitration agreements in plaintiffs' contracts -- acknowledged by the Appellate Division to be clear and conspicuous -- are entitled to enforcement.

Plaintiffs do not dispute the validity of the arbitration agreement itself nor do they dispute the delegation provision within it that delegates the question of arbitrability to the arbitrator. They have not attacked the language or clarity of the arbitration agreement or its delegation clause. Rather, they have continuously maintained that the contract was the product of fraudulent inducement and that the arbitration agreement -- within that sales contract -- is thus also invalid.

Plaintiffs seek to distinguish their claims by emphasizing their position that there was no mutual assent to arbitrate their claims because the arbitration

28

agreements they signed were "the product of fraud and trickery . . . and were not voluntarily and knowingly agreed to."  However, the disputed facts that plaintiffs allege go to whether the dealerships performed a bait-and-switch related to enticing plaintiffs to enter into the contract as a whole.  Specifically, Goffe claims that the dealership lied about the fact that she had been approved for financing in order to get her to agree to the deal and sign the contracts.  Robinson argues that the dealership represented to her that the contracts would not be enforceable until Johnson co-signed them.  They have not raised a specific claim attacking the formation of the arbitration agreement that each signed.

Moreover, the argument that either plaintiff did not understand the import of the arbitration agreement and did not have it explained to her by the dealership is simply inadequate to avoid enforcement of these clear and conspicuous arbitration agreements that each signed.  Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958) (stating the basic principle that an enforceable contract exists where a written agreement is "sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty").

Federal precedent instructs that the arbitration agreements here be severed from the rest of the agreement, whose totality Goffe and Robinson

29

contest on a number of grounds. Goffe and Robinson must arbitrate their claims as to the enforceability of the overall sales contract. As a result, their various statutory and common law claims, including their CFA claims, which allege that defendants failed to give plaintiffs copies of the contracts they signed, in violation of N.J.S.A. 56:8-2.22, should be decided by the arbitrator.[10] Under these circumstances, we do not opine on the merits of any of these claims, including the question of remedy for any alleged violation of N.J.S.A. 56:8-2.22. In the same vein, plaintiffs' claims that they rescinded their contracts is also a question for the arbitrator. To the extent that plaintiffs seek to argue that the cancellation of their purchases is the factual and legal equivalent of a rescission, that argument still goes to the enforceability of the sales agreement as a whole. Again, it is not a specific challenge to the

---

[10] We note that the agreements in this case limit the time period for purchasers to assert claims under the CFA: "If such claims are not brought within 180 days the claims will be time barred." The Appellate Division raised concerns about the same clause in NAACP of Camden County East v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 432 (App. Div. 2011), and pointed out that the provision "is at odds with the six-year statute of limitations generally applicable to CFA claims arising out of sale of merchandise," ibid. (citing N.J.S.A. 2A:14-1); see also Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 347 (2016) (finding that a private agreement to shorten the Law Against Discrimination's two-year limitations period to six months undermined and thwarted the legislative scheme and was therefore unenforceable). Because the issue was not directly raised in this appeal, we do not address it further at this time.

arbitration agreement that avoids enforcement of the severed arbitration agreement.

B.

Importantly, the Third Circuit Court of Appeals decision in Guidotti, relied upon by the Appellate Division, was misapplied here. In that case, the Third Circuit determined that different standards of review should apply to a motion to compel arbitration depending on whether or not it is apparent that there was an agreement to arbitrate between the parties. Guidotti, 716 F.3d at 776. Specifically, the Third Circuit held that if "based on 'the face of the complaint, and documents relied upon in the complaint'" it is apparent that the parties' claims are subject to an enforceable arbitration agreement, the motion to compel arbitration should be considered under a Fed. R. Civ. P. 12(b)(6) motion to dismiss standard. Ibid. (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). On the other hand,

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery [under Rule 56] on the question of arbitrability before a court entertains further briefing on [the] question."

31

[Ibid. (second alteration in original) (quoting Somerset Consulting, 832 F. Supp. 2d at 482).]

In Guidotti, the dispositive issue was whether an account agreement document, which included an arbitration clause, was included in the initial package of documents emailed to the plaintiff.  Id. at 769.  The Third Circuit determined that there was a genuine issue of material fact regarding whether the parties agreed to arbitrate because the plaintiff disputed that she actually received the emailed document containing the arbitration agreement.  Id. at 780.  For that reason, the court analyzed the case under the summary judgment standard and remanded to the District Court for limited discovery on the specific challenge to the mutuality of assent to the arbitration agreement before it would determine whether her underlying dispute was arbitrable.  Ibid.

While the plaintiff in Guidotti disputed the validity of the arbitration agreement itself,[11] plaintiffs here make general assertions that their contracts were unenforceable.  Unlike the Guidotti plaintiff, they do not claim not to have seen the arbitration agreement, for their signatures are on the written documents.  They do not dispute the validity of the arbitration agreement or its

---

[11] The plaintiff's factual claim focused on the arbitration agreement, which she asserted she never saw.  Id. at 769.  She claimed not to have received the document that allegedly was emailed to her and could therefore not have agreed to it.  Ibid.

delegation clause other than to say that it is invalid as a result of the invalidity of the contract as a whole. In fact, the Appellate Division held that if it were not for the issues regarding the enforceability of the contract itself, the arbitration agreements would be enforceable as the agreements met New Jersey standards for evidencing "clear and conspicuous expression[s] of [the] intent" of the parties to arbitrate. Goffe, 454 N.J. Super. at 271.

In our view, the Appellate Division misapprehended and consequently misapplied Guidotti.

We reviewed all published decisions that cite Guidotti. Of the cases that concern arbitration disputes,[12] no case has ever used the Guidotti standard in the way the Appellate Division did here. Specifically, no case applied the Guidotti summary judgment standard to delay or avoid enforcement of an arbitration agreement when a plaintiff challenged a motion to compel arbitration on grounds that the contract as a whole was invalid.[13]

---

[12] We note that many of the cases cite Guidotti only as a reference for a motion to dismiss or a summary judgment standard of review and do not even deal with arbitration agreements. See, e.g., Keyes v. Sessions, 282 F. Supp. 3d 858, 865 (M.D. Pa. 2017) (citing Guidotti for the summary judgment standard of review in a case involving a Second Amendment challenge).

[13] Indeed, in Somerset Consulting -- a case cited and used by the Guidotti court in reaching its own determination, 716 F.3d at 772 n.4 -- the Eastern District of Pennsylvania relied upon Prima Paint and Buckeye, addressing the plaintiffs' substantive challenge to the arbitration provision at issue only after determining that the challenge was to the arbitration provision, rather than the

33

In fact, in only one case that cites <u>Guidotti</u> -- <u>Allstate Insurance Co. v. Toll Brothers, Inc.</u>, 171 F. Supp. 3d 417 (E.D. Pa. 2016) -- did a plaintiff challenge a motion to compel arbitration by arguing that the contract as a whole was invalid. In that case, the defendants moved to compel arbitration. <u>Id.</u> at 421. Allstate, the plaintiff, opposed the motion, arguing in part that the parties never formed an agreement to arbitrate because the buyers did not receive any consideration for entering into the Agreement of Sale. <u>Id.</u> at 422. Relying on <u>Buckeye</u> and <u>Prima Paint</u>, the Eastern District of Pennsylvania rejected the contention, reasoning that the argument that there was no consideration called the entire agreement into question, not specifically the arbitration clause within it. <u>Id.</u> at 422-23. The District Court concluded this part of its analysis by citing <u>Guidotti</u> for the proposition that because the plaintiff failed to show that the arbitration clause was unconscionable, discovery on the question of arbitrability was unnecessary. <u>Id.</u> at 434 n.25. Accordingly, the District Court stayed the action pending arbitration. <u>Id.</u> at 436.

---

contract as a whole. 832 F. Supp. 2d at 486-87. The <u>Guidotti</u> court's reliance on <u>Somerset Consulting</u> supports that the Third Circuit did not intend for its holding in <u>Guidotti</u> to apply where there is a challenge to the contract as whole, like in plaintiffs' case here.

We do not suggest that there is not a place for <u>Guidotti</u> in our arbitration jurisprudence.  The decision is in line with federal case law that allows a court to decide matters that relate directly to the formation of the arbitration agreement.  However, because plaintiffs here challenge the contract as a whole rather than the arbitration agreement itself, we hold that the <u>Guidotti</u> summary judgment standard does not apply in this instance.  Rather, based on the complaint and the certifications provided to the trial court, it is apparent to us that the parties' claims are subject to an enforceable arbitration agreement.  Therefore, the arbitration agreement is severable and enforceable.  Plaintiffs must arbitrate their claims.  Before the arbitrator, plaintiffs can raise any arbitrability issues consistent with the delegation clauses in these agreements.

V.

The judgment of the Appellate Division is reversed.  We reinstate the orders compelling plaintiffs to arbitrate the merits of their claims.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.