**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2023-19T1

CHRISTINA IMPERATO,

    Plaintiff-Respondent,

v.

MEDWELL, LLC and DR. ALI
MAZANDARANI,

    Defendants-Appellants.

_____

> Argued September 29, 2020 – Decided October 19, 2020
>
> Before Judges Fasciale and Mayer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0857-18.
>
> Vafa Sarmasti argued the cause for appellants (Sarmasti PLLC, attorneys; Vafa Sarmasti and William H. Mone, on the briefs).
>
> Gary S. Graifman argued the cause for respondent (Kantrowitz, Goldhamer & Graifman, PC, attorneys; Gary S. Graifman and William T. Schiffman, on the brief).

PER CURIAM

Defendants Medwell, LLC (Medwell) and Dr. Ali Mazandarani (Mazandarani) (collectively defendants) appeal from a January 2, 2020 order denying their motion to dismiss the complaint and compel arbitration. Defendants also appeal from two related orders: a May 25, 2018 order denying their initial motion to compel arbitration and directing limited discovery; and a November 5, 2019 order reserving decision on defendants' renewed motion to compel arbitration and scheduling a plenary hearing. We affirm all orders on appeal.

Plaintiff Christina Imperato sued defendants, alleging violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Plaintiff, a former employee of defendants, claimed she was subject to sexual harassment.

Defendants moved to dismiss the complaint and compel arbitration based on a document entitled Mutual Agreement to Arbitrate Claims (Agreement). In a May 25, 2018 order, the judge denied defendants' motion without prejudice and allowed limited discovery regarding the enforceability of the Agreement. After limited discovery, defendants renewed their motion to dismiss the complaint and compel arbitration. In a November 5, 2019 order and an

accompanying written decision, the judge scheduled a plenary hearing to determine "what is factually disputed by the parties regarding [plaintiff] placing her signature on the dotted line" and "whether plaintiff entered into an enforceable arbitration agreement."

At the plenary hearing held on December 17, 2019, the judge heard testimony from plaintiff and Mazandarani and considered documents, including deposition testimony, introduced as evidence. In a January 2, 2020 order and an attached written decision, the judge denied defendants' motion to compel arbitration.

In her written decisions from November 5, 2019 and January 2, 2020, the judge made the following factual findings. Plaintiff had various jobs prior to starting work with Medwell,[1] including working at a pizzeria, a hair salon, and in sales. She obtained a high school diploma through a graduate equivalency degree program, attended cosmetology school, and completed one or two semesters at a local college.

Plaintiff saw an online job posting for Medwell and responded. The next day, January 13, 2009, plaintiff interviewed for the job at Medwell.

---

[1] Medwell is a chiropractic office.

A-2023-19T1

Mazandarani personally interviewed plaintiff, although he had no recollection of the interview process, and wanted plaintiff to begin work on the day of the interview. Plaintiff asked to start work the following Monday, January 19, 2009, and Mazandarani agreed.

Plaintiff received several forms to complete the day she started working. Plaintiff was given additional paperwork to sign on January 21 and 22, 2009. These documents contained job training information. On January 23, 2009, plaintiff was asked by Mazandarani to sign additional papers to "officially be hired." Plaintiff told the judge that Mazandarani sat opposite her, handed her papers to sign, and pointed to where she should sign and initial. According to plaintiff, she complied with Mazandarani's instructions and signed where she was told. At no time did Mazandarani indicate plaintiff could take the papers home for review and return with the signed documents the next day. Plaintiff explained she was rushed during her signing of the documents on January 23, 2009 and felt compelled to sign the documents "to keep her job and get paid."

One of the documents presented to plaintiff on January 23, 2009 was the five-page, single-spaced Agreement, governing the arbitration of claims. According to the Agreement, by signing the document, the employee "understand[s] and agree[s]" that he or she will "gain[] the benefits of a speedy,

impartial, final and binding dispute resolution procedure." The Agreement describes the arbitrable claims, which includes but is not limited to "tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition) . . . ." Despite its title as a "Mutual Agreement to Arbitrate Claims," the document has a signature line only for the employee.

Immediately above the Agreement's signature line is a section titled "Voluntary Agreement," which reads:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
>
> I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF

5

THAT OPPORTUNITY TO THE EXTENT I WISH TO
DO SO.

Plaintiff admitted she signed and dated the Agreement. The Agreement was not signed by Mazandarani or Medwell. Mazandarani had no recollection of plaintiff's interview, his involvement in her hiring, or her signing of the Agreement. Despite Mazandarani's inability to recall plaintiff's hiring process, defendants claimed plaintiff was given the employment papers, including the Agreement, to review at home prior to signing. Plaintiff testified that if she had been given the paperwork in advance, she would have consulted an attorney or family member prior to signing the documents.

The judge acknowledged plaintiff signed the Agreement but found "the scenario upon which the employer requested plaintiff['s] signatures injected a[] high level of intimidation, pressure and compression which eviscerated the paper acknowledgment." In addition, the judge noted Mazandarani "ha[d] no recollection of the circumstances for the signing of the agreement, ha[d] no records to show otherwise, and presented no other witness from his offices . . . of the pertinent circumstances." The judge concluded "[t]he method and surrounding circumstances to the signing of the [Agreement], along with the absence of any contrary evidence, point to an employer-orchestrated signing

A-2023-19T1

event, which was days after plaintiff got a taste of what it would be like to have a paid steady job in a respectable environment."

Because Mazandarani had no specific recollection of the events surrounding plaintiff's hiring, the judge deemed plaintiff's testimony regarding the hiring process more credible. The judge found plaintiff was not given the opportunity to take documents home for review. She also determined plaintiff was coerced into signing the paperwork by Mazandarani because he was present when plaintiff was given the Agreement, and he directed her where to sign and initial the document. The judge concluded the circumstances surrounding plaintiff's execution of the Agreement were "rushed and sudden." The judge found Mazandarani's request that plaintiff

> go into his office to sign some papers, page by page, does not support any manifestation of an intent to waive such rights, which was explicit, affirmative[,] and unmistakable. Under this scenario, there is no evidence that plaintiff knowingly and expressly gave up her right to a jury trial in favor of arbitration.

Based on the evidence adduced at the plenary hearing, the judge concluded "plaintiff's version of the signing of the [A]greement paints a lucid picture of either guided direction for a quick signature on a very important issue or is evidence of inconspicuous intimidation or coercion. Either way, these facts

do not support a finding of waiver according to <u>Atalese [v. U.S. Legal Servs. Grp., L.P.</u>, 219 N.J. 430 (2014)]."

On appeal, defendants argue the motion judge erred in failing to apply the correct legal standard for enforcement of an arbitration agreement. In addition, defendants claim the Agreement clearly and unambiguously informed plaintiff of her waiver of rights. Further, defendants assert the judge ignored the favored status of arbitration in this State. We disagree.

We apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements. <u>Goffe v. Foulke Mgmt. Corp.</u>, 238 N.J. 191, 207 (2019). "The enforceability of arbitration provisions is a question of law; therefore, it is one to which [this court] need not give deference to the analysis by the trial [judge.]" <u>Ibid.</u> However, a trial judge's factual findings are reviewed for an abuse of discretion. <u>See</u> <u>Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot.</u>, 447 N.J. Super. 423, 437-38 (App. Div. 2016). "The general rule is that findings by the trial [judge] are binding on appeal when supported by adequate, substantial, credible evidence." <u>Ibid.</u> (quoting <u>Seidman v. Clifton Sav. Bank, S.L.A.</u>, 205 N.J. 150, 169 (2011)).

An agreement to arbitrate is treated like any other contract. <u>Atalese</u>, 219 N.J. at 442 ("[A]n agreement to arbitrate, like any other contract, 'must be the product of

A-2023-19T1

mutual assent, as determined under customary principles of contract law.'" (quoting NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011))). "A legally enforceable agreement requires 'a meeting of the minds.'" Ibid. (quoting Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004)). The parties must have come to an understanding as to the contract's terms. Ibid. In determining enforceability of an arbitration provision, a court should consider "the relations of the parties, the attendant circumstances, and the objects they were trying to attain." Kernahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 320 (2019) (quoting Tessmar v. Grosner, 23 N.J. 193, 201 (1957)). Regarding the waiver of the right to litigate claims and defenses "in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Atalese, 219 N.J. at 442-43 (quoting Foulke, 421 N.J. Super. at 425).

"[A] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Kernahan 236 N.J. at 321 (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)). When a party presents a contract for signature but does not sign themselves, "the

omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement." Leodori v. CIGNA Corp., 175 N.J. 293, 305 (2003).

Here, the judge conducted a plenary hearing to "resolve the conflicting factual contentions on the threshold issue of whether plaintiff entered into an enforceable arbitration agreement." She weighed the evidence presented, heard testimony from plaintiff and Mazandarani, and made credibility determinations.

In denying the motion to compel arbitration, the judge found no mutual assent in the execution of the Agreement. Based on the unrefuted testimony, the judge concluded defendants, either by fraud or imposition, caused plaintiff to sign the Agreement. Further, despite the word "mutual" in the title of the Agreement, the judge held the absence of defendants' signature was a significant factor in finding the document did not represent a mutual agreement between the parties. In addition, the judge found no evidence that plaintiff was afforded an opportunity to review the Agreement prior to signing despite language in the Agreement granting her an opportunity to review the Agreement with counsel. The judge concluded "the evidence [did] not support defendants' contention that [plaintiff] chose to arbitrate with an explicit, affirmative and unmistakable

intention that she was expressly giving up her established right to bring an action in court in favor of arbitration."

Based on our review of the record developed during the plenary hearing, the absence of the conclusive presumption of assent, defendants' failure to present any contradictory evidence, and the judge's credibility findings, we are satisfied the circumstances surrounding plaintiff's execution of the Agreement did not present a clear expression of an explicit and voluntary agreement to forego the court system and be bound by arbitration.

Because we affirm the January 2, 2020 order, we need not address the earlier orders on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION