**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0620-19T1

PAUL SCHMIDT,

    Plaintiff-Appellant,

v.

ROBERT LAUB, as trustee for
THE CAROL L. GLATSTIAN
LIVING TRUST, derivatively
on behalf of MAYWOOD
SHERWOOD VILLAGE, LLC,

    Defendant-Respondent.

_____

Argued telephonically March 24, 2020 –
Decided May 5, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000334-18.

Anthony S. Bocchi argued the cause for appellant (Cullen & Dykman LLP, attorneys; Anthony S. Bocchi, of counsel and on the briefs; Steven N. Siegel, on the briefs).

Matthew K. Blaine argued the cause for respondent (Davidson Eastman Munoz Paone, PA, attorneys; Matthew K. Blaine, of counsel and on the brief).

PER CURIAM

Plaintiff Paul Schmidt appeals a Chancery Division order, denying his show cause application for a preliminary injunction to enjoin arbitration, and granting defendant's motion to dismiss plaintiff's accompanying verified complaint. Because we conclude the parties agreed to arbitrate their disputes and delegate issues of arbitrability to the arbitrator, we affirm.

I.

Plaintiff and defendant Robert Laub, in his capacity as Trustee of the Carol L. Glatstian Living Trust, and derivatively on behalf of Maywood Sherwood Village, LLC, are members of that company, which owns a multi-family rental property in Maywood. Plaintiff is the manager and holds a sixty percent interest in the company; the remaining forty percent interest is split evenly between defendant and William Compagnone, who is not a party to this appeal.

In 1999, the members signed a twelve-page operating agreement (Agreement) that embodies their rights and obligations regarding the company. At issue on this appeal are two successive paragraphs of the Agreement: one

2

A-0620-19T1

expresses the parties' broad agreement to arbitrate[1] and the other provides an exception that allows a party to sue in court for relief against a "Defaulting Member."[2]

---

[1]  11.9 Arbitration.  Except to the extent that the disputants agree in writing to any other method of resolution of a given dispute . . ., any dispute arising among the Members, or any of them, or their successors-in-interest, . . . concerning the meaning of [sic] interpretation of any provision of this Agreement, or the rights, duties, or obligation of any of the Members, including their successors-in-interest . . ., shall, with reasonable promptness be submitted to and be determined by arbitration in the State of New Jersey, by the American Arbitration Association [(AAA)] in accordance with its rules then in force and effect . . . .

[2]  11.10 Default.  If a Member fails to perform any of its obligations under this Agreement or violates any of the terms of this Agreement . . . the other Members, shall have the right (in addition to all of their rights and remedies under this Agreement, at law or in equity) to give the Member written notice of such default at any time prior to the curing of such default . . . .  If a Member is a Defaulting Member . . . the other Members may do one or more of the following, at the same or different times, in addition to all of its or their other rights and remedies . . . .

Among those other options were the rights to:  "(a) bring any proceeding in the nature of specific performance, injunction or equitable remedy . . . [and]  (b) bring any action at law or on behalf of the Member of the Company . . . to recover damages . . . ."

One year later, Glatstian filed a complaint in the Chancery Division, claiming plaintiff and Compagnone breached their fiduciary duties in various ways and, as such, they were "Defaulting Members" as defined in paragraph 11.10 of the Agreement. Glatstian sought specific performance of certain provisions of the Agreement and compensatory and punitive damages. Ultimately, the parties settled their dispute and executed a settlement agreement in 2001.

Relevant here, paragraph 7 of the settlement agreement mandates binding arbitration for "dispute[s] among the members concerning paragraph 4" of that agreement. Paragraph 4 of the settlement agreement states, in full:

> 4. Prior to incurring any single expense or single capital expenditure in excess of $20,000, the manager shall obtain the consent of all members in the subject LLC, including Carol Glatstian, whose consent shall not be unreasonably withheld, delayed or conditioned. Absent extraordinary circumstances, Carol Glatstian shall respond to such requests within ten days and to emergent matters as the emergency dictates.

Years later, in August 2018, defendant filed a seven-count demand for arbitration before the AAA that underlies the present matter. Defendant's demand sought, among other remedies, removal of plaintiff as the company's

A-0620-19T1

manager and monetary damages resulting from plaintiff's mismanagement.[3] Defendant claimed plaintiff was a "Defaulting Member" under section 11.10 of the Agreement, and that he had violated certain provisions of the settlement agreement, including paragraph four.

Plaintiff filed an answering statement with the AAA, objecting to its jurisdiction and the arbitrability of defendant's claims. The parties participated in a preliminary hearing before an arbitrator, who thereafter issued a scheduling order that included dates for the filing of any "threshold or dispositive" motions. Instead, plaintiff filed the present action in the Chancery Division. Defendant thereafter removed the action to federal court, which declined jurisdiction without deciding defendant's application to refer the matter to arbitration, and remanded the matter to the Superior Court.

Following argument, the General Equity judge rendered an oral decision denying plaintiff's application for a temporary restraining order and issued a briefing schedule for defendant's motion to dismiss plaintiff's complaint. On the return date, the judge issued a final decision after hearing argument, effectively ordering the matter to proceed to arbitration. Relying in large part on his earlier

---

[3] Defendant also named the company as a nominal respondent and the real party in interest.

determination, the judge determined the parties had agreed to arbitrate their disputes under the Agreement, including the question of arbitrability. Although the judge found the Agreement's default provision "seemed to provide an option one way or the other to the parties" for resolving their disputes against defaulting members, the judge concluded that plaintiff's participation in the arbitration proceeding effectively waived his right to object to the arbitrator's jurisdiction.

The judge also denied plaintiff's request for a stay of his order. Thereafter, the arbitrator issued an interim arbitration award. This appeal followed as of right, and we stayed the arbitration.[4]

On appeal, plaintiff raises several overlapping arguments, essentially claiming: the Agreement's default provision renders its arbitration provision ambiguous and therefore invalid; the Agreement's arbitration provision was supplanted by the 2001 settlement agreement's arbitration clause; and defendant waived arbitration because Glatstian's 2000 litigation sought similar remedies against defaulting members of the company. For the first time on appeal, plaintiff claims defendant is estopped from demanding arbitration in the

---

[4] Any order compelling or denying arbitration is deemed a final judgment for appeal purposes and is appealable as of right. R. 2:2-3(a); GMAC v. Pittella, 205 N.J. 572, 583-86 (2011); see also R. 2:9-5(c) (requiring a court to stay arbitration pending appeal absent exceptional circumstances).

underlying action. Finally, plaintiff argues his minimal participation in the arbitration proceeding did not constitute a waiver of his right to object to the arbitrator's jurisdiction. Because we conclude the Agreement's arbitration clause was valid and arbitrability issues under the Agreement were specifically delegated to the arbitrator, we need not reach plaintiff's waiver argument.

II.

We review orders permitting or denying arbitration de novo because "[t]he enforceability of arbitration provisions is a question of law." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). Accordingly, we need not defer to the trial judge's "interpretative analysis" unless it is "persuasive." Kernahan v. Home Warranty Admin. of Fla., Inc., 236 N.J. 301, 316 (2019).

We begin our review by noting the Agreement is silent as to whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to -16, or the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, governs.[5] But, we need not decide which Act applies here because the policies animating each statute share

---

[5] Defendant contends the FAA governs because the Agreement implicates interstate commerce. To support his position, defendant argues he is a resident of Florida and administers the trust from that state, while plaintiff and the company are residents of New Jersey. In his reply brief, plaintiff makes a passing reference, in a footnote, to the FAA's requirements in another context, but during oral argument before us, plaintiff contended the NJAA applies. The parties did not raise this issue before the trial judge.

the same aims. As our Supreme Court has observed, "The [FAA] and the nearly identical [NJAA] enunciate federal and state policies favoring arbitration" as a "mechanism of resolving disputes" that otherwise would be litigated. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014) (citations omitted).

It is well settled that "arbitration is a matter of contract." NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011) (internal quotation marks omitted). In determining whether a matter should be submitted to arbitration, a court must first evaluate whether a valid agreement to arbitrate exists and, if so, then decide whether the dispute falls within the scope of the agreement. Martindale v. Sandvik, Inc., 173 N.J. 76, 85, 92 (2002).

An agreement to arbitrate "must be the product of mutual assent, as determined under customary principles of contract law." Atalese, 219 N.J. at 442 (internal quotation marks omitted). "As with other contractual provisions, courts look to the plain language the parties used in the arbitration provision," Medford Twp. Sch. Dist. v. Schneider Elec. Bldgs. Americas, Inc., 459 N.J. Super. 1, 8 (App. Div. 2019), thereby honoring the intentions of the parties, Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 270 (App. Div. 2000). The terms of an arbitration provision should be read liberally and in

favor of arbitration.  <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,</u> <u>P.A.</u>, 168 N.J. 124, 132 (2006). Moreover, incorporation of the AAA rules weighs in favor of arbitration.  <u>See</u> <u>Preston v. Ferrer</u>, 552 U.S. 346, 362-63 (2008).

A.

With those principles in mind, we first examine the validity of the Agreement's arbitration provision, noting it is contained in a separate enumerated paragraph, and its terms clearly and unambiguously mandate arbitration for "any dispute arising among the [m]embers."  Those disputes "concern[] the meaning of [sic] interpretation of any provision of this Agreement, or the rights, duties, or obligation of any of the Members, including their successors-in-interest."  The provision expressly designates the AAA as the arbitral forum, with venue laid "in the State of New Jersey."

Accordingly, the arbitration provision is "succinctly stated, unambiguous, easily noticeable, and specific with regard to the actual terms and manner of arbitration."  <u>Curstis v. Cellco P'ship</u>, 413 N.J. Super. 26, 37 (App. Div. 2010) (examining the language of an arbitration agreement to determine whether a party waived his right to judicial adjudication of his statutory rights and common

9

law claims for fraud, and breach of contract). We therefore reject any suggestion that the arbitration provision is ambiguous.

Nor are we persuaded by plaintiff's argument that the Agreement's arbitration provision is undercut by the default provision that immediately follows. While the arbitration provision establishes the forum in which to resolve the members' disputes, the default provision provides alternate remedies that "may" be sought by the non-defaulting member. Those remedies include "any proceeding in the nature of specific performance, injunction or equitable remedy" or "any action at law . . . to recover damages." Those alternatives are options provided to the aggrieved member "at the same time or different times, in addition to all . . . other rights and remedies." Nothing in the language of the default provision prohibits an aggrieved party from demanding arbitration before the AAA.

Rather, the default provision is narrowly crafted and apparently designed to provide alternate avenues of redress for aggrieved members of the company. Those options might afford a more expeditious resolution than arbitration before the AAA. For example, the aggrieved party may seek restraints under paragraph 11.10(a) by way of an order to show cause in Superior Court. Not surprisingly, the defaulting party is not afforded a choice of venue. We therefore conclude

the Agreement's default provision neither overrides nor renders ambiguous the arbitration provision.

We further note plaintiff as the alleged defaulting party in defendant's arbitration demand, is not "an average member of the public[, who] may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." <u>Atalese</u>, 219 N.J. at 442. The Agreement – including its arbitration and default paragraphs – was negotiated among three sophisticated businesspeople, including plaintiff, the company's manager and majority owner.

We also reject plaintiff's argument that the 2001 settlement agreement supplanted the Agreement's arbitration clause. The settlement agreement provides a discreet remedy for disputes concerning expenditures over $20,000: arbitration before a specific retired judge; not the AAA. But, the settlement agreement neither revokes nor otherwise references the Agreement's arbitration provision. As the trial judge correctly recognized, "It does not appear on this record that the parties intended to waive any provision of the arbitration clause of the [Agreement]."

Little need be said regarding plaintiff's contention that Glatstian's litigation – filed nearly two decades before defendant's arbitration demand –

A-0620-19T1

permanently waived defendant's right to seek relief in that forum. To support his contention, plaintiff attempts to advance a "course of performance" argument. Plaintiff's argument is misplaced.

Courts may consider the parties' course of performance when interpreting ambiguous contractual terms. See Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 77-78 (App. Div. 2011) (noting courts may consider the parties' "course of performance" when interpreting "vague or ambiguous provisions of a contract"). As we stated above, however, no such ambiguity exists in the Agreement's provisions at issue here.

B.

We next address whether defendant's dispute falls within the scope of the Agreement, recognizing its arbitration provision expressly provides arbitration before the AAA. The applicable AAA rules set forth the broad jurisdiction of the arbitrator. See AAA Commercial Arbitration Rules and Mediation Procedures Rule 7 (Oct. 1, 2013). Subsection (a) of the rule provides:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

And, according to subsection (b):

The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

Our courts have not specifically addressed the issue, but "[v]irtually every [federal] circuit [court of appeals] . . . has determined that incorporation of the [AAA] arbitration rules [in an arbitration agreement] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Oracle Am., Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir. 2013); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 763-64 (3d Cir. 2016).

We find the reasoning in Chesapeake Appalachia to be persuasive. We conclude that the incorporation of the AAA rules into the arbitration provision clearly and unambiguously expressed the parties' intent to empower the arbitrator to determine arbitrability. As our Supreme Court has recognized "when the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override the contract, even if the court thinks that the argument that the arbitration agreement applies to a

13

dispute is 'wholly groundless.'"  <u>Goffe</u>, 238 N.J. at 211 (quoting <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, 568 U.S. ___, 139 S. Ct. 524, 528-29 (2019)).

Plaintiff's belated estoppel arguments, and any other contentions that we have not specifically addressed, lack sufficient merit to warrant discussion in our written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0620-19T1