**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0156-19T2

BRENDAN CLARE and
CAROLYN CLARE,

      Plaintiff-Respondent,

v.

ACT, INC.,

      Defendant-Appellant.

_____

Argued September 21, 2020 – Decided October 26, 2020

Before Judges Currier, Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1067-18.

Caroline Mew (Perkins Coie LLP) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for appellant (Methfessel & Werbel, and Caroline Mew, attorneys; Shaji M. Eapen, on the briefs).

Patrick J. Clare argued the cause for respondent (Clare & Scott, LLC, attorneys; Patrick J. Clare, of counsel and on the brief).

PER CURIAM

In this matter, we consider whether plaintiffs are required to submit their claims to arbitration under the provisions contained in the contract executed with defendant. The trial judge found the arbitration provisions were procedurally and substantively unconscionable and denied defendant's motion to compel arbitration. After a de novo review, we conclude the arbitration clauses are valid and enforceable and plaintiffs' claims are subject to arbitration. Therefore, we reverse the trial court's order.

## I.

As a high school student proceeding through the college application process, plaintiff Brendan Clare[1] took the ACT college admissions test administered by defendant three times. The ACT measures an examinee's abilities in English, mathematics, reading, and science. Examinees are given a score for each subject along with a composite score.

In late April 2018, defendant advised Brendan of its concerns regarding the validity of his scores on the second and third tests. Defendant explained that its review of test data reflected that Brendan's second and third exams had an unusually high number of identical correct and incorrect responses as another

---

[1] Plaintiff Carolyn Clare is Brendan's mother. She claims defendant's grossly negligent conduct caused her to incur $1260 in tutoring lessons to prepare Brendan for the fourth examination.

A-0156-19T2

examinee. In addition, Brendan's scores increased significantly on the second and third examinations from the score achieved on the first test. Defendant informed Brendan it was performing an official score review. At the time, Brendan was a senior, and after receiving acceptances from several colleges and universities, he matriculated into the university he currently attends.

Defendant advised Brendan of three options to respond to the score review: (1) he could cancel the second and third test scores; (2) he could take a private retest at defendant's expense to confirm the questioned scores; or (3) he could provide documentation to help establish the validity of his scores, which would be reviewed by defendant's review panel.

The letter further informed Brendan that defendant would continue to treat his scores as valid during the review process. Defendant also advised Brendan of his options if the review panel decided to cancel the test scores.

Brendan chose the third proffered option and provided documentation to help establish the validity of his scores. After reviewing the information, defendant notified Brendan in June 2018 there was substantial evidence to conclude the scores were invalid and to cancel the test scores from the second and third examinations. Defendant provided a detailed explanation of its

analysis, concluding in the review panel's determination to invalidate the scores based on the totality of the evidence.

Defendant again offered Brendan three options prior to a cancellation of the scores: he could (1) voluntarily cancel his test scores; (2) take a private retest at defendant's expense to confirm the prior scores; or (3) challenge the review panel's cancellation decision in binding arbitration through written submissions to the American Arbitration Association (AAA).

Brendan chose to take a private retest. His composite score on the retest was within the range required by defendant to satisfy its inquiry, and Brendan was advised in early August 2018 that the score review was closed, and his test scores had not been cancelled. The ACT scores were treated as valid during the entire score review process. No schools were notified of defendant's inquiry.

II.

ACT examinees who register online must agree to a set of terms and conditions to complete their registration. Brendan agreed to these provisions when he registered for each test.

On the day of the examination, examinees must also agree to the terms and conditions by signing their name below the following provision: "By submitting this answer sheet, I agree to comply with and be bound by the *Terms*

*and Conditions: Testing Rules and Policies for the ACT® Test* provided in the ACT registration materials for this test, including those concerning test security, score cancellation, examinee remedies, arbitration. . . ."  In a space provided, examinees must write the following certification: "I agree to the Statement above and certify that I am the person whose name and address appear on this answer sheet."

Brendan completed the certification on the day of the examinations.  In addition to certifying and agreeing to the terms and conditions on the answer sheet, an examinee also completes a similar procedure on the cover of their test booklet.

The terms and conditions include two arbitration clauses.  The first provision in dispute is the Individual Score Review (ISR) which states:

> If ACT discovers reason to believe your score may be invalid – such as evidence of unusual similarities in the answers of you and another examinee, evidence that you may have falsified your identity or impersonated someone else, evidence of possible advance access to test questions or answers, or other indicators the test scores may not accurately reflect your level of educational achievement – ACT may conduct an Individual Score Review.  **ACT reserves the right to cancel test scores when there is reason to believe the scores are invalid.  Proof of misconduct is not required to cancel scores.**

A-0156-19T2

ACT will take steps to notify you if ACT decides to conduct an Individual Score Review. The notice includes information about why ACT has started the Individual Score Review and options available for resolving it. If the scores that are the subject of the Individual Score Review have not yet been reported by ACT, ACT reserves the right to hold those scores pending the outcome of the review process, including any appeal. More information regarding the review process will be provided to you if ACT opens an Individual Score Review regarding your score.

**For Individual Score Reviews, the final and exclusive remedy available for you to appeal or otherwise challenge a decision by ACT to cancel your test score is binding arbitration.** The arbitration will be conducted through written submissions to the American Arbitration Association ("AAA"), unless both you and ACT agree to submit the matter to an alternative forum. By agreeing to arbitration in accordance with these Terms and Conditions, you are waiving your right to have your dispute heard by a judge or jury.[2] If you choose to appeal a decision by ACT to cancel your test scores by exercising your right to seek arbitration of that decision, you must pay a nonrefundable filing fee of $200 to the AAA (or alternate forum) as your share of the filing fee, and ACT will pay the remainder of the filing fee. Your share of the filing fee is payable in full when a request for arbitration is filed with the AAA, but will be reimbursed by ACT if you prevail in arbitration and your scores are not cancelled. The only issue for arbitration will be whether ACT acted reasonably and

---

[2] In the terms and conditions applicable to the third exam taken by Brendan, ACT bolded the following sentence: "**By agreeing to arbitration in accordance with these Terms and Conditions, you are waiving your right to have your dispute heard by a judge or jury.**"

A-0156-19T2

in good faith in deciding to cancel the scores. No damages may be awarded by the arbitrator and each party is responsible for its own fees and expenses, including attorneys' fees, except as otherwise expressly provided in these Terms and Conditions. No arbitration involving the outcome of an Individual Score Review may be maintained as a class action, and the arbitrator shall not have the authority to combine or aggregate the disputes of more than one individual, conduct any class proceeding, make any class award, or make an award to any person or entity not a party to the arbitration.

In addition to the ISR, the terms and conditions include a general arbitration clause in a provision entitled "Arbitration of Disputes with ACT" (general arbitration clause) which states:

> All disputes – other than disputes involving "Individual Score Reviews" (described above) or infringement of ACT's intellectual property rights – that relate in any way to registering for or taking the ACT test, requesting or receiving accommodations [or supports] on the ACT test, the reporting of ACT test scores or the use or disclosure of personal information by ACT, shall be resolved by a single arbitrator through binding arbitration administered by the American Arbitration Association ("AAA"), under the AAA Consumer Rules ("AAA Rules") in effect at the time a request for arbitration is filed with the AAA. Copies of the AAA Rules can be located at **www.adr.org**. No arbitration may be maintained as a class action, and the arbitrator shall not have the authority to combine or aggregate the disputes of more than one individual, conduct any class proceeding, make any class award, or make an award to any person or entity not a party to the arbitration. By agreeing to arbitration in accordance with these Terms

and Conditions, you are waiving your right to have your dispute heard by a judge or jury.[3]

Each party will be responsible for its own fees and expenses incurred in connection with the arbitration, regardless of the outcome of the arbitration, except as otherwise expressly provided in these Terms and Conditions. In no event shall ACT be liable to an examinee for any special, indirect, consequential, exemplary, or punitive damages.

**NOTE:** Separate procedures apply to arbitration proceedings involving Individual Score Reviews. These procedures are discussed above, under the heading "Individual Score Reviews."

III.

After defendant advised its score inquiry was closed, Brendan and his mother instituted suit against defendant, alleging tortious claims of gross negligence in defendant's handling and timing of the score review and violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -226.[4]

---

[3] In the terms and conditions accompanying the third exam, ACT bolded the following sentence: "**By agreeing to arbitration in accordance with these Terms and Conditions, you are waiving your right to have your dispute heard by a judge or jury.**"

[4] Brendan added the CFA claims in a Second Amended Complaint. After the trial court denied defendant's motion to compel arbitration, plaintiff requested and was granted leave to again amend his complaint. Because the Third Amended Complaint was filed after the trial court considered the validity of the

Defendant filed a motion to compel arbitration. Brendan opposed the motion and filed a cross-motion to invalidate the arbitration clauses.

In a January 14, 2019 order and written statement of reasons, the trial court found the arbitration clauses were procedurally and substantively unconscionable as applied to Brendan and void against public policy. We disagree.

Preliminarily, the court noted Brendan did not contend he did not understand the rights he waived when he registered for and took the ACT. Furthermore, the court observed Brendan did not assert his age as a defense – he was seventeen when he took the second test and eighteen at the time of the third examination.

The court found defendant's contract was a contract of adhesion. The court determined the font size – "extremely small" and "7 point type" – was a violation of the Plain Language Act (PLA), N.J.S.A. 56:12-1 to -13.[5] In

---

arbitration clauses, we only consider the allegations presented in the Second Amended Complaint.

[5] Brendan has not raised the issue of font size before this court. As stated, an examinee registers for the ACT and acknowledges its terms and conditions online, allowing the registrant to expand the size of the print in his or her browser. Brendan also has not raised any violation of the PLA as an issue before this court.

considering whether the provisions were unconscionable, the court stated minors could not waive their rights to a jury trial.[6] The court also determined that both arbitration provisions excluded an award of damages so there was no remedy available to Brendan in an arbitration proceeding.

In conclusion, the court found "ACT's binding arbitration clauses and damages waivers are procedurally and substantively unconscionable as applied to plaintiff, and void as against public policy, and will not be enforced." In a footnote, the court added: "The court has serious concerns about the enforceability of the arbitration provisions on additional grounds such as adequate notice, mutual assent, as well as confusion and ambiguity in the competing provisions of the contract and the AAA rules."

IV.

We "apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). "The enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by the trial court." Ibid.

---

[6] Brendan has not asserted this argument on appeal.

On appeal, defendant asserts: (1) the trial court failed to apply the Federal Arbitration Act (FAA) 9 U.S.C. §§ 1 to 16; (2) Brendan is contractually bound to arbitrate his claims; (3) the trial court erred in finding the arbitration provisions procedurally and substantively unconscionable; (4) the court erred in finding the arbitration agreement void as to public policy; and (5) the court erred in invalidating the arbitration provisions in their entirety rather than severing the parts unenforceable under New Jersey law.

The Federal and New Jersey Arbitration Acts, see 9 U.S.C. §§ 1 to 16 and N.J.S.A. 2A:23B-1 to -36, express a general policy favoring arbitration. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)).

Mindful of that tenet, in considering Brendan's arguments, we begin with the basic premise that when a party to an arbitration agreement argues that the agreement is unconscionable and unenforceable, we look to the same state law principles that apply to contracts generally. Delta Funding Corp. v. Harris, 189

N.J. 28, 39 (2006). An arbitration clause can be invalidated and declared unenforceable by generally applicable contract defenses such as fraud, duress or unconscionability. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996).

We agree with the trial court's determination that the contract between Brendan and defendant is a contract of adhesion – "[a] contract where one party . . . must accept or reject the contract." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992) (internal citation omitted). Its "essential nature . . . is that it is presented on a take-it-or-leave-it basis, . . . without opportunity for the 'adhering' party to negotiate . . . ." Ibid. (internal citation omitted).

Here, an examinee who registers to take the ACT must agree to the terms and conditions set forth in the contract to complete the registration. On the test day, the examinee must certify and acknowledge their acceptance of defendant's terms and conditions on the top of their answer sheet and on their test booklet. An examinee cannot bargain or negotiate specific terms or alter the arbitration agreement in any way.

However, the nature of an adhesion contract alone does not make it unenforceable. Id. at 354. Where there are allegations of unconscionability,

courts must conduct a fact-sensitive analysis. <u>Muhammad v. Cnty. Bank of Rehoboth Beach</u>, 189 N.J. 1, 15-16 (2006).

In determining whether to enforce the terms of a contract of adhesion, courts look not only to the take-it-or-leave it nature or the standardized form of the document, but also to: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the "adhering" party; and (4) the public interests affected by the contract. <u>Rudbart</u>, 127 N.J. at 356. Those factors focus on procedural and substantive aspects of the contract "to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement." <u>Delta</u>, 189 N.J. at 40 (internal citations omitted).

Here, the trial court found the arbitration provisions were unconscionable because Brendan was a minor at the time of executing the contract and the provisions precluded any award of damages. Although we note Brendan did not assert his age as a defense before the trial court or this court, we recognize age can be a factor of unfairness between the contracting parties.

As our Court has stated, a contract of adhesion necessarily involves indicia of procedural unconscionability. <u>Id.</u> at 39. But Brendan's age is not

sufficient to establish the "overwhelming procedural unconscionability" necessary to render the contract unenforceable. Muhammad, 189 N.J. at 16 n.3. In addition, we disagree that, under these circumstances, a minor cannot be bound to an arbitration agreement.

As described, Brendan was informed of defendant's contractual terms and conditions at the time of registration for the exam, and twice on testing day. There was no time pressure to complete the registration process; a registrant had all the time he or she needed to review the terms and conditions and inquire of a parent or other adult the meaning of its provisions. Brendan's age alone is insufficient to void the arbitration agreement.

We turn then to the court's conclusions of substantive unconscionability and whether the contract is "so one-sided as to shock the court's conscience." Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 565 (Ch. Div. 2002). The trial court found the provisions were substantively unconscionable because Brendan was precluded from obtaining relief under the ISR or general arbitration clause. That was a misapprehension of the clauses.

Because Brendan did not choose to challenge the score review decision under the ISR, that clause was not triggered. But we note an examinee can be accorded relief under the ISR. If the arbitrator determined the review panel

14

acted in bad faith or unreasonably, the arbitrator would order defendant to restore the cancelled ACT scores. Therefore, the examinee would receive equitable relief because the inquiry would be terminated, and the scores reinstated.

The allegations in Brendan's Second Amended Complaint regarding defendant's negligence in the reporting of test scores fall within the parameters of the general arbitration clause. That provision is triggered to resolve "[a]ll disputes . . . that relate in any way to registering for or taking the ACT test, . . . [and] the reporting of ACT test scores." And, under that clause, the arbitrator is authorized to award damages. The provision only excludes the award of "special, indirect, consequential, exemplary, or punitive damages." The arbitration agreement does not limit direct damages or statutory damages allowed under the CFA. See Arafa v. Health Express Corp., _ N.J. _, _ (2020) (stating that arbitration provisions do not need to expressly reference statutory rights to create an enforceable agreement to arbitrate statutory claims). Therefore, the general arbitration provision is not unconscionable, as it does not prohibit an award of damages.

A-0156-19T2

Without specific findings, the trial court concluded the arbitration clauses were "void as against public policy." We turn then to a consideration of the relevant interests of examinees, test administrators and the public.

In Scott v. Educ. Testing Serv., 252 N.J. Super. 610 (App. Div. 1991), the defendant challenged the validity of the test scores achieved by the plaintiff on the National Teachers Examination. The defendant offered the plaintiff several options to resolve the issue and the plaintiff chose binding arbitration. Id. at 612. After the arbitrator ruled in favor of the defendant, the plaintiff moved to vacate the award and for other relief. Ibid. To determine whether the defendant needed to show actual cheating or other misconduct prior to cancelling the test scores, we recognized the competing public and private interests. Id. at 618. We stated:

> [An examinee] has a legitimate interest in assuring that [he or] she is not stripped of a valid test score. ETS has an interest in assuring the accuracy of the test results it reports and the predictions it thereby makes. The other test-takers are entitled to assurance that no examinee enjoys an unfair advantage in scoring. The school officials to whom test results are certified need to be assured that all reported test results are reliable. Finally, the public at large has an interest in assuring that all persons certified as teachers have in fact fulfilled the requirements of that certification.
>
> [Ibid.]

We concluded a testing administrator was not required to show proof of actual misconduct to justify the cancellation of questioned scores.  Id. at 621.

As in Scott, the private and public interests here all seek the reliability of the test scores.  Defendant must be able to vouch for the integrity of its test results; the public relies on the validity of the test scores to make decisions concerning college admissions, course placements and scholarships.  A test examinee, minor or adult, also shares the interest of reliability, knowing he or she is on equal footing with all other test takers.  We are satisfied the arbitration clauses are not deemed unenforceable on public policy grounds.

Before the trial court, Brendan argued the arbitration clauses were not compliant with Atalese, 219 N.J. at 430.  Although the motion judge expressed "concerns" in a footnote regarding waiver and mutual assent in the parties' contract, he did not address those issues.  For completeness, we will do so.

In determining the enforceability of an arbitration agreement, as with any other contract, a court must resolve "whether the agreement to arbitrate . . . a dispute is 'the product of mutual assent, as determined under customary principles of contract law.'"  Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019) (quoting Atalese, 219 N.J. at 442).  "Mutual assent

A-0156-19T2

requires that the parties have an understanding of the terms to which they have agreed." Atalese, 219 N.J. at 442.

Although no particular form of words is necessary to accomplish a clear and unambiguous waiver of rights, id. at 444, an arbitration clause must "explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

We are satisfied the arbitration clauses at issue here meet the Atalese standard. As stated, an examinee must agree to the terms and conditions of the ACT contract when he or she registers for the examination and again on test day. There is a table of contents for the terms and conditions and "Individual Score Review" and "Arbitration of Disputes with ACT" are topics within the table of contents.

The ISR is located on page three of the four-page terms and conditions. Its heading, in bold print, states: "**For Individual Score Reviews, the final and exclusive remedy available for you to appeal or otherwise challenge a decision by ACT to cancel your test score is binding arbitration.**" The examinee is informed the arbitration will be conducted through the AAA unless the parties agree to an alternative arbitration forum. The clause further informs:

"By agreeing to arbitration in accordance with these Terms and Conditions, you are waiving your right to have your dispute heard by a judge or jury."

The general arbitration clause is located on the fourth and final page of the terms and conditions. The examinee is again informed he or she is waiving the right to have the dispute heard by a judge or jury. It alerts the examinee that all disputes against ACT will be resolved by a single arbitrator through binding arbitration administered by the AAA. Both arbitration clauses provide sufficient information to put an examinee on notice that a score review challenge or any dispute pertaining to the ACT test will be submitted to binding arbitration and will not be resolved by a judge or jury.

For the reasons stated, we are satisfied the arbitration clauses contained in defendant's contract are not unconscionable. With more than two million students taking the ACT test in 2017,[7] the clauses provide the examinees an expedient, streamlined and confidential resolution of any disputes regarding the taking of the test and the reporting of the scores. This is a mutual goal desired by the examinee and the test administrator. Because we conclude the clauses are enforceable, we reverse the trial court's order.

---

[7] Caralee J. Adams, In the College-Testing Game, ACT Outscores SAT—for Now, 36 Educ. Week 22, 22-23 (2017).

Reversed and remanded to the trial court for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0156-19T2