NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3461-20

OLIVIA CHECCHIO, a minor
by her guardian ad litem,
LISA KUMP-CHECCHIO, and
LISA KUMP-CHECCHIO,
individually,

      Plaintiffs-Respondents,

v.

EVERMORE FITNESS, LLC,
d/b/a SKY ZONE SOUTH
PLAINFIELD ("SKY ZONE"),
SKY ZONE FRANCHISE
GROUP, SKY ZONE LLC,
CIRCUSTRIX HOLDINGS, LLC,
CIRCUSTRIX, LLC,

      Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 15, 2022**
>
> **APPELLATE DIVISION**

Argued December 14, 2021 – Decided February 15, 2022

Before Judges Currier, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7065-20.

Jill A. Mucerino argued the cause for appellants (Wood Smith Henning & Berman LLP, attorneys; Kelly A. Waters, of counsel and on the briefs; Jill A.

Mucerino, Carolynn A. Mudler, and Sean P. Shoolbraid, on the briefs).

Kenneth W. Elwood argued the cause for respondents (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; Kenneth W. Elwood, on brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

In August 2018, fourteen-year-old Olivia Checchio went to Sky Zone South Plainfield—an indoor trampoline park—with four friends and Gina Valenti—the mother of one of the children. Upon arrival at the park, Valenti signed a document entitled "Participant Agreement, Release and Assumption of Risk (The Agreement) – Sky Zone South Plainfield, NJ" (2018 agreement). The 2018 agreement included an arbitration provision under which the signing adult on behalf of the minor child waived a jury trial and agreed to arbitrate any dispute or claim arising out of the child's use of the Sky Zone premises.

The 2018 agreement also stated:

> I understand that this agreement extends forever into the future and will have full force and legal effect each and every time I or my child(ren)/ward(s) visit Sky Zone, whether at the current location or any other location or facility.
>
> . . . .
>
> By signing below, I represent, warrant and certify that I am the parent, legal guardian, or power-of-attorney of the above listed [c]hild(ren) and have the authority

> to execute this [a]greement on his/her or their behalf and to act on his/her or their behalf.

Valenti was not Olivia's[1] parent, legal guardian, or holder of a power-of-attorney.

After Olivia was injured while using the facilities, her mother, Lisa Kump-Checchio, filed a suit on behalf of Olivia and for her own individual claims. Defendants[2] moved to enforce the arbitration agreement. The trial court denied the motion, stating that because Valenti signed the arbitration agreement Olivia's parents "never agreed to the arbitration provision and . . . mutual consent [was] lacking."

Defendants moved for reconsideration, including in their application five agreements signed by Lisa on behalf of Olivia when she had taken Olivia to Sky Zone on five occasions in 2016 (2016 agreements). The judge granted defendants' motion for reconsideration on April 25, 2021. He found that, because Lisa signed five prior agreements, she "realized when the child was going to the park . . . Ms. Valenti was going to be confronted with a release that she had to sign in order to let the kids in the park." Therefore, the trial court found Valenti had actual and apparent authority to sign the arbitration agreement.

---

[1] We refer to plaintiffs by their first names for clarity.

[2] We refer to all defendants collectively as defendants.

A-3461-20

Two weeks later, this court issued its decision in Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 21-22 (App. Div. 2021), finding that a non-parent lacked apparent authority to sign defendants' waiver agreement on behalf of a minor child and therefore, the plaintiffs were not bound by the defendant's arbitration agreement. Plaintiffs moved for reconsideration of the April 25, 2021 order. The judge granted the motion on June 17, 2021, vacating the April 25, 2021 order and restoring the matter to the active trial docket. The court found there was "no evidence that [Lisa] . . . actually gave authority to . . . [Ms. Valenti] to waive [Lisa's] child's rights."

Defendants appeal from the June 17, 2021 order, contending Valenti had apparent authority to sign the 2018 agreement on behalf of Olivia and the trial court misapprehended the law established in Gayles.

Our review of an interpretation of a contract, including an arbitration clause, is de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . courts unless we find it persuasive." Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (citing Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019)).

Defendants assert that Lisa's execution of the 2016 agreements on behalf of Olivia on five prior occasions when she brought Olivia to Sky Zone

 A-3461-20

demonstrates a pattern of conduct sufficient to find Valenti had actual and apparent authority to sign the 2018 agreement when Valenti brought Olivia to the park. We disagree.

Although defense counsel asserted during oral arguments before this court that Valenti had actual and apparent authority to execute the agreement on behalf of Olivia, defendants did not produce any authority in their briefs or during argument to support a finding of actual authority. And the evidence in the record does not sustain a finding of any manifestation made by Lisa to Valenti to expressly imbue Valenti with the power to waive any rights regarding any claims Olivia was entitled to pursue against Sky Zone. Lisa did not sign an agreement waiving Olivia's rights to a jury trial on the day Olivia was injured. Valenti never testified that Lisa gave her the specific authority to waive Olivia's rights regarding any personal injury claim that might arise from Olivia's time at the park.

Instead, defendants assert Valenti had apparent authority to execute the agreement and to bind Olivia (and Lisa) to its contents. We turn then to a scrutiny of those principles.

Apparent authority focuses on a third party's reasonable expectations in their interactions with the principal's agent. N.J. Laws.' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010). "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on

behalf of the principal and that belief is traceable to the principal's manifestations.'" Ibid. (quoting Restatement (Third) of Agency § 2.03 (Am. Law Inst. 2006)). "There need not be an agreement between [the principal and agent] specifying an agency relationship; rather, 'the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation.'" Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337 (1993) (quoting Henningsen v. Bloomfield Motors, 32 N.J. 358, 374 (1960)).

The party seeking to rely on the apparent agency relationship must establish:

> (1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established alone and solely by proof of [conduct by] the supposed agent; (2) that a third party has relied on the agent's apparent authority to act for a principal; and (3) that the reliance was reasonable under the circumstances.
>
> [Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 317-18 (App. Div. 1999) (alteration in original) (citations and quotation marks omitted).]

And, when determining an agent's apparent authority, courts should not focus on the alleged agent's actions, but must look to the conduct of the alleged principal. Id. at 318.

As noted, we recently considered and rejected an identical apparent authority argument proffered in Gayles. There, the minor plaintiff was also injured while playing at the defendants' trampoline park. 468 N.J. Super at 19-

6

21. The minor's friend's mother signed an agreement on the minor's behalf that was required for admission to the park. The agreement contained a similar arbitration provision. Id. at 20. We found that a non-parent lacked apparent authority to sign a waiver agreement and therefore, the minor and his mother were not bound by the arbitration agreement. Id. at 21-22.

However, defendants contend Gayles is distinguishable from the circumstances here because Lisa executed an agreement on behalf of Olivia when she took her to the park on five prior occasions in 2016. Defendants do not seek to enforce the 2016 agreements. Instead, defendants urge that the agreements demonstrate a pattern of prior conduct, and, therefore, establish apparent authority. We are not persuaded.

The 2016 agreements did not vest Valenti with the authority to enter into the 2018 agreement or any future agreement on Olivia's behalf. Nor do the 2016 agreements manifest any understanding on Lisa's part that Valenti or any other adult could sign a future waiver agreement in the place of Lisa or on Olivia's behalf. To the contrary, the 2016 agreements state that any "DISPUTE SHALL BE BROUGHT WITHIN ONE YEAR OF THE DATE OF THIS AGREEMENT AND WILL BE DETERMINED BY BINDING ARBITRATION." Therefore, under the 2016 agreements, Lisa only waived Olivia's trial rights as to the events that occurred on the specific date of each of

those visits in 2016, and the parties were required to arbitrate any claims within a year of each agreement.

Furthermore, unlike the 2018 agreement, the 2016 agreements did not include the clause stating the agreement "extends forever into the future and will have full force and legal effect each and every time I or my child(ren)/ward(s) visit Sky Zone, whether at the current location or any other location or facility."[3] The 2016 agreements contained different language than the 2018 agreement. There is no evidence Lisa would have signed the 2018 agreement. And, Lisa's prior execution of the agreement did not establish a pattern that she would authorize another person to sign an agreement on behalf of her daughter. Therefore, the 2016 agreements do not establish Valenti had apparent authority to waive Olivia's trial rights under the 2018 agreement.

Finally, defendants were unaware of the 2016 agreements when Olivia and Valenti came to the trampoline park in August 2018. Defendants did not find the 2016 agreements until after the court ruled on the initial motion to dismiss the complaint and compel arbitration. Therefore, defendants could not

---

[3] The points raised in this appeal do not require us to address whether this language in the 2018 agreement is enforceable. But see Cottrell v. Holtzberg, 468 N.J. Super. 59, 72-73 (App. Div. 2021) (holding that an arbitration agreement governing the plaintiff's initial admission to the defendant's nursing home is insufficient to demonstrate assent to arbitrate claims related to a subsequent admission to the nursing home).

have reasonably relied on the 2016 agreements to demonstrate that Lisa gave Valenti apparent authority in 2018 to waive Olivia's trial rights.

Defendants have not demonstrated apparent authority to permit Valenti to waive Olivia's rights. Apparent authority relies on the principal's manifestations—not those of the agent. Mercer, 324 N.J. Super. at 318. Therefore, although Valenti executed the agreement in which she represented and certified she was the parent, legal guardian, or power of attorney of the listed minors, she was not. Defendants did not establish any previous conduct on Lisa's part to create an appearance of authority, and defendants' reliance on Valenti's signature to their agreement was not reasonable under the circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION